Carolyn Ehmen Ellingwood, a/k/a Carolyn Ellingwood Huber, Plaintiff-Appellant, *v.* Robert Whitcomb Ellingwood, Defendant-Appellee.

(No. 58914;

First District (1st Division)—January 20, 1975.

Burditt & Calkins, of Chicago, and Bruce Parkhill, deceased, of Evanston (John R. Blomquist, of counsel), for appellant.

Leonard M. Ring, of Chicago (John L. Ladle, Jr., of counsel), for appellee.

Mr. JUSTICE GOLDBERG delivered the opinion of the court:

In June of 1947, Carolyn Ellingwood (plaintiff) obtained a decree of divorce from Robert Ellingwood (defendant) in the circuit court. The decree directed payment of $40 per month for support of a child and $5 a month for alimony. In August of 1948, plaintiff filed a petition to modify these payments. After a hearing in which both parties participated, a "decretal order" was entered. Effective August 16, 1948, defendant was ordered to pay $75 per month for child support and $25 per month for alimony.

On August 17, 1970, 22 years after the effective date of this order, plaintiff filed a petition alleging that defendant then owed arrearages of $7,760.67 together with accrued interest of $4,815.70. Plaintiff prayed entry of judgment against defendant for $12,576.37. After a lengthy hearing of all the evidence and arguments, the trial court, on January 18, 1973, entered a judgment order finding that plaintiff was estopped from recovering any amount in excess of $70 per month for child support and alimony from and after June 16, 1949. Accordingly, the court entered judgment in favor of plaintiff for $2,563.96 and interest in the amount of $830.01. Plaintiff appeals.

Plaintiff contends primarily that she is not estopped to recover the arrearages in child support and alimony in full together with interest. Her basic theory is that the amounts due her became vested and could not be changed or taken away by a subsequent order of the court. Defendant urges, in response, that plaintiff is barred by equitable estoppel by virtue of having accepted payments in the reduced amount for 16 years without objection, pursuant to an agreement with defendant. He further urges that the trial court correctly found that there had been an agreement between the parties for payment of lesser amounts than those specified in the court decree.

It is agreed by the parties that the child arrived at majority on October 11, 1965, so that payment of support money should abate as of that date.

In addition, plaintiff remarried on October 11, 1968, so that alimony should cease as of that date.

Additional preliminary comments are required. Plaintiff's petition for the entry of judgment filed August 17, 1970, contained a detailed and lengthy schedule of amounts which accrued under the decretal order, of payments made, and of the resulting arrearages in principal and interest. This exhibit shows a total due on principal, to and including the date of plaintiff's remarriage, of $7,760.67 plus interest of $4,815.70; a total of $12,576.37. On May 12, 1971, with leave of court, plaintiff amended this petition by substituting a new schedule (designated as Exhibit B) which reflected a total principal arrearage of $16,130.62 with interest of $3,955.63; a total of $20,086.25. These schedules had both been prepared by plaintiff's former attorney of record, now deceased. An affidavit by this lawyer shows that the original schedule was prepared in error and that the subsequent schedule (Exhibit B) is in fact an accurate statement of the arrearages existing in compliance with the decretal order. There appears to be no serious objection to the accuracy of these figures, leaving for determination by this court only the merits of the appeal concerning the reduced amount awarded to plaintiff.

Defendant has filed an answer to the petition in which he set up four affirmative defenses: An agreement between the parties for acceptance of $70 per month in lieu of $100 per month; by virtue of reduced payment by defendant and acceptance by plaintiff for such a long period of time, defendant owes nothing; plaintiff's claim is barred by laches or limitations; by her conduct plaintiff has waived the right to $100 per month or is estopped from claiming any arrearage "by virtue of the equities herein." After a hearing the trial judge sustained a motion by plaintiff to strike out the first three of these defenses. This would eliminate the defenses of the specific agreement, the conduct of the parties and laches or limitations, leaving only waiver or estoppel. The judgment order appealed from by plaintiff does not recite the existence of any agreement but finds that plaintiff is estopped from recovering any amount in excess of $70 per month. However, in his remarks prior to judgment, the trial judge stated that defendant had relied upon an agreement with plaintiff and had taken on additional obligations so that there was an equitable estoppel in defendant's favor. In his brief in this court, defendant urges that the finding of the trial court was correct in that there was an agreement between the parties. However, defendant builds this argument upon the basis of an implied agreement. In oral argument before this court, counsel for defendant agreed that there was no enforceable agreement between these parties. It follows that defendant's contention, which remains to be determined, is whether plaintiff is equitably estopped.

From our examination of the entire record, we conclude that there was no express agreement between these parties for a reduction of the amount specified in the decretal order. There were no direct conversations or correspondence between them during the 22 years which intervened from the effective date of the decretal order to the filing of plaintiff's petition. For most of this entire period, defendant has resided outside of the State of Illinois, and the record shows only some correspondence between his local counsel and plaintiff's attorney which contains no evidence of any express agreement regarding reduction of payments.

The record shows that five payments of $45 each were initially made by defendant. As of December 16, 1948, defendant commenced to make monthly payments of $100 each. Five of these payments were made until and including April of 1949. Defendant then started a series of monthly payments of $70 commencing June 1949 and continuing, with slight irregularity, to and including December 1950. Throughout 1951 and for the first 5 months of 1952, his payments approximated $60 each. He paid $130 in August of 1952. He made monthly payments of $65 per month from September 1952 to and including July 1953. In August 1953, he again commenced payment of $70 per month and this continued virtually without interruption to and including October 6, 1965. No payment of any kind was made by defendant after October 1965.

■■ A discussion of the legal and equitable rights of these parties must necessarily commence with the basic premise that payments of alimony or child support, when directed by order of a court with jurisdiction over the subject matter and the parties, become a vested right of the designated recipient as and when they accrue. This court recently held that the right to past-due installments of child support constitutes a vested right which may not be reduced or eliminated by the court. A number of cases which support this proposition were noted in the decision. (*Slavis v. Slavis,* 12 Ill.App.3d 467, 472, 299 N.E.2d 413.) We should carefully note the language which this court in *Slavis* quoted from *Stark v. Stark,* 131 Ill.App.2d 995, 998, 999, 269 N.E.2d 107, in which this court pointed out the strong judicial policy in abiding by this general rule. It should be added that, although commonplace today, divorce is a social scourge in its effect upon the children of broken marriages, which is another cogent reason for strict enforcement of the policy of vested rights.

In the short time since our opinion in *Slavis,* the Appellate Court of Illinois has decided four more cases, each illustrating the binding force of the rule of vested right with reference to alimony as well as child-support payments. *Baldwin v. Baldwin,* 21 Ill.App.3d 380, 315 N.E.2d 649; *Green v. Green,* 21 Ill.App.3d 396, 315 N.E.2d 324; *Graham v.*

*Graham,* 21 Ill.App.3d 1032, 316 N.E.2d 143; *Strum v. Strum,* 22 Ill.App. 3d 147, 317 N.E.2d 59.

■■ The courts of Illinois have defined the concept of equitable estoppel which may, under proper circumstances, create an exception to the otherwise rigid rule. The definition stated in *Dill v. Widman,* 413 Ill. 448, 455, 456, 109 N.E.2d 765, was cited with approval in *Hickey v. Illinois Central R. R. Co.,* 35 Ill.2d 427, 447, 220 N.E.2d 415. This definition is:

> " '* * * where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estoppel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts.' "

After careful consideration, we have come to the conclusion that we may not apply the doctrine of equitable estoppel to the rights of these parties. Plaintiff has not by her statements or conduct led defendant into the current situation. Plaintiff has never communicated with defendant either verbally or in writing during all of the intervening years which followed the entry of the decretal order. It is true that plaintiff was silent throughout, despite a period of inordinate length during which the arrearages persisted and she made no demand upon defendant for payment. To counter this, it should be noted that plaintiff's original attorney was her uncle who died in March of 1950. From then until 1964 she did nothing and apparently made no demands upon defendant. In the summer of 1964, she retained counsel who took her file and papers and did nothing until May of 1967. That very month, plaintiff retained another attorney who kept her papers and did nothing until about the middle of 1969. During 1970, plaintiff retained an attorney who represented her in the trial court and in this court until his death. Shortly thereafter she retained other counsel.

■■ However, we cannot create an equitable estoppel upon the sole fact of failure of plaintiff or of any person in her behalf to make a demand upon defendant. Defendant participated in the hearing which resulted in entry of the decretal order. He was, therefore, fully aware of its terms. As shown, he complied with the order by making the required payments of $100 per month for a period of some 5 months until April of 1949. Each and every other payment that he made during all the intervening years and until October of 1965 shows that the order of court was never out of his mind. There was no need for plaintiff to

make a specific demand upon defendant to remind him of the order. Defendant cannot by his own default place the burden of making additional demands upon plaintiff. No such demand could possibly have had greater significance or efficacy than the original mandate of the court.

It now remains to examine the pertinent authorities including those cited and depended upon by both sides. In *Slavis*, defendant testified that after accrual of certain arrearages he gave plaintiff a check which she tore up in his presence, accompanying this act with the statement that she did not want to have his money. Plaintiff denied this. This court held that, even if the trial court had accepted this evidence as true, this fact, together with plaintiff's subsequent failure to make demand for payment, fell short of establishing estoppel or waiver. The court pointed out that "[e]stoppel (or waiver) must be proved by clear and unequivocal evidence." 12 Ill.App.3d 467, 474.

Defendant relies upon *Anderson v. Anderson*, 48 Ill.App.2d 140, 198 N.E.2d 342. The same case was again before this court (63 Ill.App.2d 358, 211 N.E.2d 492). In the first of these appeals, one of the issues involved was whether defendant should be punished for contempt of court for violation of the support order. This court reversed the finding of contempt and remanded the cause. The court pointed out that, although past-due installments of child support could not be reduced, this did not mean that in a proper case the court could not "give effect to an agreement by a party to waive the payments or accept a lesser amount." (48 Ill.App.2d 140, 147.) The court also stated that the doctrine of equitable estoppel could be applied to past installments "in an appropriate case."

On remand, the trial court found that plaintiff was equitably estopped to claim certain payments which had accrued during a period of time in which defendant relied on representation of plaintiff and her new husband that they would waive further child support if he would consent to their adoption of his child. Defendant executed the consent and assumed that the adoption was consummated, which it never was. The trial court invoked estoppel from the time of the consent until the date that plaintiff filed a petition for enforcement of the support order some 2 years later. This court approved that result. Since *Anderson* involved contempt, it is distinguishable from the case before us. Also, since defendant changed his position by executing a consent to the adoption, we cannot say that the result reached by the court was unjustified.

In *Wolfe v. Wolfe*, 303 Ill.App. 188, 24 N.E.2d 871, this court also dealt with contempt of court for failure to make support payments. The parties there had definitely reached an agreement that support money should be reduced from $15 to $12.50 per week. For 5 years defendant

paid all of the reduced amounts in accordance with this agreement so that no issue existed as to his compliance therewith. Plaintiff accepted the reduced payments for 5 years without a protest. For almost all of this time, the child was in the custody of the defendant's mother who contributed to its support. (303 Ill.App. 188, 191, 24 N.E.2d 871.) The court therefore granted defendant relief.

In a more recent case, this court arrived at a similar result without citing *Wolfe*. In *Strum v. Strum*, 22 Ill.App.3d 147, 317 N.E.2d 59, a case involving contempt, this court held that, although past-due installments for child support are vested after their due date, the doctrine of equitable estoppel should be invoked. This was done because the child, with either the consent or acquiescence of the mother, took up residence with her father who supported her. From this fact, the court arrived at a conclusion consonant with equitable estoppel.

In *Royster v. Royster*, 339 Ill.App. 250, 89 N.E.2d 279, (First District, General No. 44796, abstract opinion), a case involving contempt, the parties entered into an agreement to reduce child support from $10 per week to $30 per month. This was never submitted to the court. The wife took the position that the arrangement was to last only a short time. Citing *Wolfe*, the court held that the agreement for reduction between the parties was not binding but was subject to possible ratification by the court. In granting this ratification, the court could consider delay in enforcement of the decree and the absence of extreme hardship upon the former wife. The court, accordingly, affirmed an order dismissing the petition for contempt.

■■■ The cases involving punishment for contempt of court are different from those concerned with a petition for a money judgment. As a defense to a contempt action, respondent need show simply that his failure to comply with the order was not a wilful and contumacious refusal. (*Storm v. Storm*, 9 Ill.App.3d 1071, 1076, 1077, 293 N.E.2d 633.) In contrast, where a respondent attempts to avoid the vested rights of petitioner by use of a special defense such as equitable estoppel, he has the burden of proving his case by evidence which is "clear, precise and unequivocal." *Jennings v. Bituminous Casualty Corp.*, 47 Ill.App.2d 243, 249, 197 N.E.2d 513.

In our opinion, none of the authorities above reviewed are decisive of the case at bar. We have here no issue of contempt; we have a complete absence of any agreement between these parties regarding the amount of the payments and the elements of equitable estoppel are lacking. It is true that the amount of the arrearages together with interest may impose a financial hardship. In all fairness, it may not be said that this is due in any measure to affirmative conduct by plaintiff or that

plaintiff is now responsible for any difficulty in which defendant may find himself. Defendant remarried in 1954 and has two children aged 13 and 17. However, he did not comply with the order of court, of which he was fully aware, for some years prior to this marriage, and he failed to obey the order after October of 1965. There is no evidence, if defendant is now in a predicament, that this was caused by his reliance upon the conduct of plaintiff. (Compare *Atwater v. Atwater*, 18 Ill.App.3d 202, 210, 211, 309 N.E.2d 632, involving arrearage of payments under a property settlement agreement.) We do not find the required elements for equitable estoppel in the case before us. Defendant failed to prove equitable estoppel by that degree of "clear, precise and unequivocal" evidence which the law requires. (47 Ill.App.2d 243, 249.) In this regard, the finding of the trial court is not in accord with the evidence. Plaintiff is entitled to the benefits of the decretal order as entered.

As shown, the computations presented by counsel for the plaintiff included interest on the amount of each arrearage at the legal rate from the dates of accrual. In *Anderson*, (48 Ill.App.2d 140, 147), the statement is made that allowance of such interest "is a matter within the sound discretion of the court." However, authority seems contrary to this and apparently eliminates the element of discretion. In *Pope v. Pope*, 2 Ill. 2d 152, 159, 160, 117 N.E.2d 65, the court held, citing previous decisions of the supreme court, that, where a judgment called for defendant to make future payments, interest at the legal rate should run from the due date of each individual payment even though the judgment order itself did not expressly provide for such interest. (See also *Neeland v. Neeland*, 17 Ill.App.3d 803, 806, 807, 308 N.E.2d 651, and cases therein cited.) We believe that we have no choice or discretion in this matter.

We will, accordingly, modify the judgment order entered herein on January 18, 1973, by changing the amount found due to plaintiff to $20,086.25, which is comprised of principal arrearage of $16,130.62 and interest of $3,955.63, with the further provision that this judgment bear interest thereon at the rate of 6% per annum from and after the date hereof. As modified, the judgment appealed from is affirmed.

Judgment affirmed as modified.

BURKE, P. J., and EGAN, J., concur.