Anita Caroline Alsen, Plaintiff-Appellant, v. David Stoner, Defendant, Harry B. Stoner, The Valley National Bank of Aurora, and The First National Bank of Batavia, Respondents-Appellees.

Gen. No. 69–17.

Second District.

October 28, 1969.

Certificate of importance and rehearing denied
December 5, 1969.

Reid, Ochsenschlager, Murphy and Hupp, of Aurora, for appellant.

Boodell, Sears, Sugrue & Crowley, of Chicago (Barnabas F. Sears and Gerald M. Sheridan, Jr., of counsel), for appellees.

MR. JUSTICE SEIDENFELD delivered the opinion of the court.

Anita Caroline Alsen, plaintiff, appeals from an order quashing citations issued under the provisions of Ill Rev Stats 1967, c 110, § 73, and c 110A, § 277. The

supplementary proceedings were brought to enforce a purported judgment under the Paternity Act. (Ill Rev Stats 1967, c 106¾, §§ 51–66.) Harry B. Stoner, The Valley National Bank of Aurora, and The First National Bank of Batavia were made respondents to the citation petition as holders of assets purporting to be those of David Stoner, the defendant in the paternity suit. The court also held the underlying judgment of paternity void for lack of jurisdiction over David Stoner.

The basic inquiry presented by the proceedings below is whether a paternity action may be initiated by service of a civil summons as well as by warrant; and whether this issue can be reached in a supplementary action to collect the judgment from assets held by third parties.

Plaintiff filed her complaint on October 17th, 1967. A warrant was issued in accordance with the prayer of the complaint, but was returned unexecuted with a recitation that the defendant was not found in the state. On November 3rd, without order of court, the clerk issued a form of summons used in civil cases under the Civil Practice Act. This summons was also returned with a recitation that the defendant was not found.

On November 14th, 1967, another summons was issued which was on the printed form of the usual civil summons, amended to recite that the summons charged an offense under the Paternity Act and requiring the defendant to appear in court at a fixed hour, thirty days after the service of the summons. In addition to the usual clerk's signature, there was attached an order of court that the defendant be ordered to appear as "above set forth," signed by the judge. The return of service recites service upon a family member "at the usual place of abode of said defendant," with summons mailed to the same place.

On January 23rd, 1968, an order of default was entered on the defendant upon his failure to appear. A hearing was then held and a paternity judgment order

was entered finding the defendant to be the father of plaintiff's child as alleged in her complaint, and awarding her the sum of $150 per week for support, and confinement expenses in the amount of $970.85.

The arrearages were reduced to judgment on July 1st, 1968. Thereafter, the court issued a citation to the defendant. The citation was not served on defendant personally but the return recited that it was left with a member of his family at a usual place of abode and a copy mailed there. On July 1st, the court entered an order of default against the defendant for his failure to respond to the citation and entered judgment against him in the amount of $3,525.85. Thereafter, on September 27th, 1968, supplementary proceedings to discover assets were commenced against the three respondents who filed special appearances and motions to quash.

Plaintiff concedes that section 55 of the Paternity Act, supra, provides that upon the filing of a verified complaint the court shall "issue a warrant for the apprehension of the defendant" which may be served in any county of the state. It is also acknowledged that section 64 of the Paternity Act provides that the provisions of the Civil Practice Act shall apply to all proceedings under the Paternity Act, "except as otherwise specifically provided in this Act."

However, plaintiff argues that there is an alternative procedure established under the provisions of Ill Rev Stats 1967, c 38, § 107–11:

> "When authorized to issue a warrant of arrest a court may in lieu thereof issue a summons."

Respondents maintain that the provisions of the Criminal Code have no application to the prosecution under the Paternity Act which is civil in nature.

The trial judge reasoned that proceedings under the Paternity Act are of a special statutory origin and are independent of the Criminal Code, and are inde-

pendent of the Civil Practice Act to the extent that specific provisions are found in the Paternity Act. Therefore, he concluded that plaintiff could not get service under the Civil Practice Act because the Paternity Act provided the method for bringing in the defendant. We agree. Remedies which are conferred by statute in derogation of the common law may be enforced only in the manner prescribed in that statute. Kosicki v. S. A. Healy Co., 380 Ill 298, 302, 44 NE2d 27 (1942); Toms v. Lohrentz, 37 Ill App2d 414, 417–18, 185 NE2d 708 (1962); People ex rel. Cantazaro v. Centrone, 48 Ill App2d 484, 485–6, 199 NE2d 226 (1964).

██ Provisions regarding service of process, arrest, preliminary hearing, binding over for trial and the power to require bond, remain substantially the same under the present Paternity Act as they were under the previous Bastardy Act. See 47 IBJ 826. Cases construing procedures under the former act are applicable to the present. People ex rel. Covington v. Johnson, 79 Ill App2d 266, 269, 224 NE2d 664 (1967).

██ We believe that the legislative intention to insure the defendant's presence for examination in open court is clearly evident in the language of the Paternity Act, Ill Rev Stats 1967, c 106¾, § 55:

> "Upon the filing of a complaint . . . under oath or affirmation before the court, the court shall thereupon issue a warrant for the apprehension of the defendant, . . . which may be served . . . in any county. Upon the appearance of the accused and in his presence, the court shall examine the woman, . . . on the charge that he is the father of the child. The accused shall have right to controvert the charge, . . . . If the court is of the opinion that no sufficient cause is established it shall dismiss the complaint and discharge the accused . . . ."

Similarly the provisions for bond, and for committing "the accused" to the county jail for his neglect or refusal to give bond and security (Section 55, supra), also point to the reason for the issuance of a warrant rather than civil process.

Respondents have cited an opinion of the Attorney General of Illinois supporting this view. Illinois Attorney General's Opinions, 1965, pages 175 and 176:

> "It seems clear from the statutory language of the Paternity Act (Illinois Revised Statutes 1963, chapter 106¾) that the only method by which jurisdiction of a defendant may be obtained is by the issuance and service of a warrant. There is no provision in the Paternity Act which will permit service of process outside of the State or any method other than by personal service. In Attorney General Opinions, UP 1285, November 6, 1964, it was stated 'The Paternity Act which requires the appearance of the defendant for both the furnishing of bond and trial of the case, makes absolutely no provision for service by copy or mail, and allows no personal service outside the State. No default judgment is possible in a Paternity action.' There is a good reason why the examination of the woman should take place upon the appearance and in the presence of the accused. By the very nature of Paternity actions there is difficulty of proof of one's innocence. A putative father should be present in order that he may offer testimony or other evidence to controvert the testimony and evidence of the complainant. If after hearing the evidence of the complainant and the refuting evidence of the accused, the court is of the opinion that no sufficient cause is established, it shall dismiss and discharge the defendant.

> "In my opinion, the only way jurisdiction of the accused can be obtained in a Paternity action pursuant

to the Paternity Act is by the issuance and personal service of a warrant. Further, it is my opinion that the accused must be physically present at the Paternity proceedings in order that he might controvert evidence offered by the complainant."

■ Although the opinion, of course, is not binding on the courts, we consider that its reasoning is persuasive and that it is, therefore, entitled to weight in this matter of first impression in the courts of this State. See Strat-O-Seal Mfg. Co. v. Scott, 72 Ill App2d 480, 485, 218 NE 2d 227 (1966) ; City of Champaign v. Hill, 29 Ill App2d 429, 444, 173 NE2d 839 (1961).

While not applicable on its facts, we find a suggestion of the unique nature of Paternity proceedings, assuming a defendant's presence in open court, and showing a recognition of the responsibility to admonish a defendant as to the nature and consequences of the charge and his rights to counsel and a jury trial, in People ex rel. Adams v. Sanes, 41 Ill2d 381, 385, 243 NE2d 233 (1968). These admonishment procedures are foreign to civil practice.

Plaintiff cites Poindexter v. Willis, 87 Ill App2d 213, 231 NE2d 1 (1967) as contrary authority.

It is true that in that case defendant was not even a resident of the State of Illinois, did not appear at trial, and there was no preliminary hearing, nor a bond furnished; also that service of summons was effected in the State of Ohio, and that no warrant was ever served. Plaintiff relies upon the holding of the case that sections 16 and 17 of the Civil Practice Act, providing for service outside the State on one who commits a tortious act within the State, applies to proceedings under the Paternity Act. However, the issue as to whether jurisdiction could be obtained by service of summons was not raised by the parties, nor considered by the court and we do not consider it authority here.

In Toms v. Lohrentz, supra, page 418, we stated:

"Upon the filing of a complaint, the Paternity Act provides that the 'Court shall thereupon issue a warrant for the apprehension of the defendant.' This is the only method provided for obtaining jurisdiction of the putative father."

■ In that case we were not dealing with the issue which we have before us directly in this case, and the language quoted was used to support the court's reasoning that an action under the Paternity Act did not survive the death of the putative father. There is, of course, no need to obtain a warrant to insure the appearance of a defendant in court if he appears voluntarily before the court. See People ex rel. Covington v. Johnson, supra, page 270. Here the defendant did not appear in court at any time voluntarily or otherwise.

■ The process that was finally served by substituted service on the family of the defendant at his place of abode was not the civil summons contemplated under the Civil Practice Act. It provided for an appearance by the defendant in court but at a designated hour, thirty days after its service. It designated a case under the Paternity Act and the Court's order was endorsed upon it. The further argument of the plaintiff is that it may be sustained as a summons or notice to appear under the provisions of Ill Rev Stats 1967, c 38, §§ 107–11, 107–12. The argument is not persuasive. The particular provisions of the Criminal Code were not in effect when the Paternity Act was adopted in 1957. Moreover, the Code of Criminal Procedure applies only in criminal proceedings (Ill Rev Stats 1967, c 38, § 100–2), while proceedings under the Paternity Act are not criminal actions. People v. Glees, 322 Ill 189, 190, 152 NE 575 (1926). It should also be noted that the procedure under section 107–11 is for the purpose of getting a party into court without the necessity and inconvenience of an immediate arrest, and

223

the procedure contemplates that if he does not so appear, the court can only obtain jurisdiction by the issuance and personal service of a warrant. See Committee Comments, SHA c 38, §§ 107–11, 107–12.

Plaintiff argues, with considerable ingenuity, that since the Paternity Act provides for no form of warrant or any manner of service, it would be necessary in a normal paternity prosecution to look to the Code of Criminal Procedure for such provisions, and that you would therefore look to the same Code for the alternative to a warrant. For the reasons which we have already noted, we do not believe that the Paternity Act contemplates the adoption of the procedure under the Criminal Code. The term "warrant" used in the Paternity Act has a well known and accepted meaning apart from reference to any other legislation as "particularly, a writ or precept issued by . . . competent authority, addressed to a sheriff, constable, or other officer, requiring him to arrest the body of a person therein named, and bring him before the magistrate or court, to answer, or to be examined, touching some offense which he is charged with having committed." Black's Law Dictionary, 4th Ed, Page 1756.

■ We conclude that the failure to serve the defendant, David Stoner, by a warrant in the paternity action deprived the court of jurisdiction to enter the paternity judgment. While the defendant might have conferred the necessary jurisdiction upon the court, if he had generally appeared in response to the purported process, he did not do so.

■ We do not consider any questions as to the form of supplementary proceedings to collect the accrued support payments. In our view, the failure to serve a warrant under the Paternity Act was a jurisdictional defect, and not a mere irregularity, making the original judgment void. Supplementary proceedings to collect, of whatever nature, must derive their support from the main judgment, and if the main judgment fails the right

to collect in such proceedings must also fail. Dennison v. Taylor, 142 Ill 45, 56–7, 31 NE 148 (1892); First Nat. Bank of Palatine v. Hahnemann Institutions of Chicago, Inc., 356 Ill 366, 370, 190 NE 707 (1934); Thomas v. Kowalewski, 12 Ill App2d 283, 289, 139 NE2d 604 (1957).

We affirm the judgment of the court below.

Affirmed.

MORAN, P. J. and DAVIS, J., concur.